UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JANE DOE

v.                                                                  C.A. NO. 18-10-JJM-LDA

RHODE ISLAND SCHOOL OF DESIGN

## DEFENDANT'S MOTION IN LIMINE TO LIMIT THE TESTIMONY OF WILLIAM F. RUSSELL, Ph.D.

Defendant Rhode Island School of Design ("RISD") moves for an Order limiting the scope of the trial testimony by Plaintiff's expert witness, William F. Russell, Ph.D. ("Dr. Russell"). Dr. Russell met with Plaintiff once twenty-six months ago on August 24, 2018. By his own admission during his deposition, he has undertaken no additional work or analysis subsequent to his August 24, 2018 meeting with Plaintiff, other than drafting and issuing his report three months later on December 6, 2018 and engaging in a brief telephonic conversation with Plaintiff on June 6, 2019 (the day before his deposition). Dr. Russell has not reviewed any of Plaintiff's counseling records, nor any other records for that matter, dated after August 24, 2018. Russell 6/7/19 Dep. Tr. at 17:8-11; 37:21-24; 38:4-7 (cited excerpts filed under seal as Exhibit A hereto).

In his report, Dr. Russell reserves "the right to amend or supplement this report if additional information becomes available." Report at 9 (previously filed under seal at Doc. 33-33). However, Plaintiff has never produced any supplemental disclosure of any subsequent work, review, evaluation or examination done by Dr. Russell of any record evidence dated after August 24, 2018. Consequently, Dr. Russell's trial testimony should be limited only to his evaluation of Plaintiff's mental health as of August 24, 2018 and not thereafter.

**Background**

Dr. Russell was retained for a "mental health evaluation in relation to a sexual assault that occurred while on an overseas school program for [RISD]." Report at 1. During Plaintiff's single meeting with Dr. Russell on August 24, 2018, she was present in his office for about five (5) hours, from approximately 9:30 a.m. to approximately 2:30 p.m. Dep. Tr. at 23:19 to 24:13. Dr. Russell spent the first ten to fifteen minutes meeting jointly with Plaintiff and her mother as an introductory interaction. *Id*. at 24:18 to 25:1. Dr. Russell interviewed Plaintiff for approximately two-hours. *Id*. at 65:12-17. Near noontime, Dr. Russell and Plaintiff took a twenty-minute break, followed by Plaintiff's completion of a Minnesota Multiphasic Personality Inventory ("MMPI") standardized test. *Id*. at 65:18 to 66:1. When Plaintiff completed the MMPI test, Dr. Russell did not interview her again and simply checked on her well-being, finding "no indications that she wasn't safe to leave and then she departed." *Id*. at 66:2-8. After his single meeting with Plaintiff, Dr. Russell spent approximately three hours scoring and interpreting Plaintiff's MMPI test and then "probably spent about eight hours writing the report [dated December 6, 2018]." *Id*. at 28:2-16.[1]

On June 7, 2019, RISD's counsel deposed Dr. Russell. During the ten-month period between his meeting with Plaintiff and deposition appearance, Dr. Russell spoke with Plaintiff just once briefly via telephone for "approximately 20 to 30 minutes" on June 6, 2019. *Id*. at 9:2-7. During that conversation, in her "exact words," Plaintiff told Dr. Russell that she was "recovering," yet Dr. Russell explored nothing further to analyze how, why, or to what extent. *Id*. at 10:22-23. Dr. Russell did not ask Plaintiff for any information about her academic performance or

---

[1] Dr. Russell testified that his invoiced time collectively totals twelve hours, which encompassed his review of the records provided to him (all pre-dating August 24, 2018), the single meeting with Plaintiff, interpretation of the MMPI test, and drafting of his report. Dep. Tr. at 29:16 to 31:5.

accomplishments during the recently completed 2018/19 academic year (her final undergraduate year).  *Id*. at 11:13-19.

Other than this telephonic conversation on June 6, 2019, there were no other oral or written communications between Dr. Russell and Plaintiff subsequent to August 24, 2018.  *Id*. at 16:17-21.  Dr. Russell has not supplemented his report based upon his June 6, 2019 conversation with Plaintiff, nor does he intend to supplement his report.  *Id*. at 63:18 to 64:15.  As he affirmed in his deposition, he stands upon what he understood and observed <u>as of August 24, 2018</u> (as stated in his report).  *Id*.

Dr. Russell's report lists "materials reviewed" without any specific identifying date ranges.  Report at 1.  During his deposition, Dr. Russell could not confirm or fully describe the "entire range" of "materials reviewed."  *Id*. at 37:15 to 38:11.  Additionally, Dr. Russell could not confirm under oath whether, as of August 24, 2018, he had even received and reviewed a complete set of Plaintiff's counseling records with Aurit Lazarus PsyD., Plaintiff's mental health counselor since the fall of 2016.  *Id*.  Under oath, Dr. Russell confirmed that he "did not review any records from Dr. Lazarus post August 24, 2018."  *Id*.  Since his deposition, nothing has been disclosed to indicate that he has ever done so.

In his report, Dr. Russell opines that, based upon (1) his review of records entirely pre-dating August 24, 2018 and (2) his single session with Plaintiff and the MMPI test administered on that date, Plaintiff "will most certainly require at least 24 to 30 months of individual therapy twice a week in order to effectively ameliorate the symptoms and other problems caused by the rape." Report at 9.  This projected time period has now essentially passed, yet Dr. Russell has not supplemented his report to evaluate or confirm the accuracy of what he projected.  Simply put, Dr. Russell cannot now proffer any testimony or opinion about either (1) the effect of Plaintiff's

3

counseling during the ensuing twenty-six months after he met with Plaintiff and (2) the current state of her emotional well-being. Also, although not proffered as a vocational expert and unqualified to be one, Dr. Russell concludes his report with a blanket statement that "[g]iven the intensity of her traumatic experience and the resultant sequelae, [Plaintiff's] ability to obtain employment in a competitive market, and maintain employment in a stressful work environment have been compromised." *Id*.

## Argument

During Dr. Russell's deposition, RISD asked him whether he intends to amend or supplement his report. Dr. Russell responded "only if it was necessary to provide information that [Plaintiff] gave me yesterday [during his telephone conversation with her on the eve of his deposition]. But that was consistent with the contents of the current report. So, I don't feel any need to amend it. However, that's something that counsel could request." *Id*. at 63:12 to 64:6. RISD further asked, whether he had received any information, since his August 24, 2018 meeting with Plaintiff and as he testified on June 7, 2019, that necessitated either an amendment or supplementation of his report. Dr. Russell responded: "No, I did not." *Id*. at 64:7-11. RISD confirmed that Dr. Russell's report constituted "a complete statement of all opinions that you will express and the basis and reasons for them," which Dr. Russell expressly affirmed and nothing has since indicated otherwise. *Id*. at 64:12-15.

As RISD details in the section of its concurrently filed pretrial memorandum filed under seal (Section III – "Background Relating to Plaintiff's Alleged Damages"), there have been many highly material record developments relating to Plaintiff's damage claim since Dr. Russell's single meeting with her on August 24, 2018. *See* Doc. No. 50-1 at pp. 14-18 (under seal). RISD

4

describes these developments more fully in its pretrial memorandum (which is incorporated herein by reference) and summarizes below the following examples of the subsequent developments:

- Plaintiff completed her undergraduate education ten months after her August 24, 2018 meeting with Dr. Russell earning high academic honors presenting a capstone project and a thesis, but Dr. Russell apparently knows nothing about those details.  In fact, as Dr. Russell admitted, he asked Plaintiff nothing about her final academic year (2018/19) during their June 6, 2019 telephone conversation.

- Dr. Russell states in his report that "Plaintiff has no interest in sexual activity" and opines as to his views about her ability to maintain an intimate relationship.  Over the past year and a half, as referenced in Dr. Lazarus' counseling records (which Dr. Russell has never apparently received or reviewed), Plaintiff has been involved in a relationship with her current partner.  In fact, Plaintiff relocated to Providence earlier this year to reside with her partner.  These material details are apparently unknown to Dr. Russell.

- As he testified in his deposition, Dr. Russell understood that Plaintiff intended as of that time (now over a year ago) to pursue a professional career making props and prosthetics in the film industry (likely in Los Angeles).  *Id*. at 13:6-10, 123:9-16.  Regarding his purported and blanket vocational opinion stated at the end of his report, Dr. Russell testified to his belief that Plaintiff may struggle in the film industry, which he "described an intensive and competitive experience." *Id*. at 121: 9-16.  He then expressed his belief that "[t]he competition for employment in these areas, whether it's lighting, whether it's staging, whether it's prop., whether it's acting is frequently like cattle calls, where many, many people are applying for that particular position." *Id*. at

5

121:23 to 122:7.  When asked to explain the support for this vocational assertion, Dr. Russell stated only was that he "has friends and acquaintances that are working in both film and stage." *Id*. at 121:17-22.  Yet, apparently currently unknown to Dr. Russell and as is often the case with a recent college graduate, Plaintiff has decided to alter the path of her nascent artistic career – having recently applied for a prestigious scholarship (through RISD and with her alma mater's full support and resources over the past seven months) to conduct an academic research project (which RISD describes in more detail in its pretrial memorandum filed under seal).  Further, RISD asked Dr. Russell whether Plaintiff expressed to him any future plans to attend graduate school, and Dr. Russell indicated that "she did not." *Id*. at 120:14-17.  Yet, as Plaintiff states in her pending application for the prestigious scholarship, she intends to apply to an Ivy League graduate school within the next five years.  Assuming that he is qualified to proffer a vocational opinion (which he clearly does not appear to be), how can Dr. Russell possibly opine about Plaintiff's ability to succeed in any career path when he is apparently unaware of what she is actively pursuing at this time and intends to pursue within the next few years?

- Plaintiff, who told Dr. Russell on June 6, 2019 that she working on "recovering," has since continued on that path through her counseling with Dr. Lazarus.  Yet, none of this highly material counseling information is apparently relevant or significant to Dr. Russell, who stated during his deposition that he will stand only upon what he reviewed as of August 24, 2018.

In sum, Plaintiff has made a choice to proffer Dr. Russell based upon a snapshot in time, now dating back over twenty-six months, which should be the sole scope of his permissible

testimony. Anything beyond that scope would be unfair and prejudicial to RISD and inconsistent with Plaintiffs' supplementation obligations under Rule 26.

RHODE ISLAND SCHOOL OF DESIGN

By Its Attorney

/s/ Steven M. Richard

Steven M. Richard (#4403)
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: 401-454-1020
Fax: 401-454-1030
srichard@nixonpeabody.com

Dated: October 13, 2020

## CERTIFICATE OF SERVICE

I certify that, on October 13, 2020, I filed and served this Motion in Limine to Limit the Testimony of William Russell, Ph. D. through the Court's CM/ECF system.

/s/ Steven M. Richard

4823-3519-5597.1